# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS

### WACO DIVISION

| | |
|---|---|
| **GREATGIGZ SOLUTIONS, LLC,** | |
| **PLAINTIFF,** | |
| **vs.** | **Civil Action No. 6:20-cv-00545** |
| **LINKEDIN CORPORATION,** | **JURY TRIAL DEMANDED** |
| **DEFENDANT.** | |

## LINKEDIN CORPORATION'S MOTION TO DISMISS FOR IMPROPER VENUE, OR IN THE ALTERNATIVE FOR TRANSFER TO THE <u>NORTHERN DISTRICT OF CALIFORNIA</u>

# TABLE OF CONTENTS

**Page**

I.  Introduction ...................................................................................................................1

II.  Factual Background .........................................................................................................2

    A.  GreatGigz and Its Complaint......................................................................................2

    B.  LinkedIn Does Not Reside or Have Any Place of Business in W.D. Tex. .......................3

    C.  LinkedIn's Headquarters and Relevant Operations are Located in N.D. Cal. .................4

III.  Legal Standard ................................................................................................................5

    A.  Dismissal for Improper Venue ....................................................................................5

    B.  The Patent Venue Statute ...........................................................................................5

IV.  Argument .......................................................................................................................6

    A.  Venue is Improper in W.D. Tex. ................................................................................7

        1.  LinkedIn Does Not "Reside" in W.D. Tex. ...........................................................7

        2.  LinkedIn Lacks a "Regular and Established Place of Business" Within W.D. Tex. ......................................................................................................................7

            a)  GreatGigz's Complaint Fails the *Cray* Test ........................................................7

    B.  If the Court Declines to Dismiss the Case, Transfer to N.D. Cal. is Appropriate ..........10

        1.  This Action "Could Have Been Brought" in N.D. Cal............................................11

        2.  The Private Interest Factors Favor Transfer to N.D. Cal. ......................................11

            a)  Access to Sources of Proof..................................................................................12

            b)  Availability of Compulsory Process.....................................................................12

            c)  Cost of Attendance for Willing Witnesses ...........................................................13

        3.  The Public Interest Factors Favor Transfer to N.D. Cal..........................................14

            a)  Local Interest......................................................................................................14

            b)  Court Congestion.................................................................................................15

            c)  Familiarity with Applicable Law and Conflicts of Law........................................15

V.  Conclusion......................................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

CASES

*Ambraco, Inc. v. Bossclip B.V.*,
  570 F.3d 233 (5th Cir. 2009) ...............................................................................5

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).............................................................................................8

*Assetworks, Inc. v. City of Cincinnati*,
  No. SA 02 CA 0351 FB, 2003 WL 25463096 (W.D. Tex. Mar. 31, 2003)............................5

*Bd. of Regents v. Boston Sci. Corp.*,
  No. 1:17-cv-1103, Dkt. 27 (W.D. Tex. Mar. 12, 2018), *aff'd* 936 F.3d 1365
  (Fed. Cir. 2019).............................................................................................1, 9

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)............................................................................................8

*Caldwell v. Palmetto State Sav. Bank of S.C.*,
  811 F. 2d 916 (5th Cir. 1987) ...........................................................................10

*Chicky Tackle, LLC v. Vallentine*,
  No. 6:18-CV-00063-RWS, 2018 WL 4286186 (E.D. Tex. Sept. 7, 2018)..............................10

*CUPP Cybersecurity LLC v. Symantec Corp.*,
  No. 3:18-CV-01554-M, 2019 WL 1070869 (N.D. Tex. Jan. 16, 2019) ............................9, 11

*Experian Info. Sols., Inc. v. F.T.C.*,
  No. CIV. 3:00-CV-1631-H, 2001 WL 257834 (N.D. Tex. Mar. 8, 2001).............................10

*In re Adobe*,
  No. 20-126 (Fed. Cir. Jul. 28, 2020) ........................................................... passim

*In re Cray Inc.*,
  871 F.3d 1355 (Fed. Cir. 2017)..................................................................... passim

*In re Dropbox, Inc.*,
  No. 2020-130 (Fed. Cir. July 28, 2020) ..........................................................13, 15

*In re Genentech, Inc.*,
  566 F.3d 1338 (Fed. Cir. 2009)....................................................................12, 13

*In re Google LLC*,
  949 F.3d 1338 (Fed. Cir. 2020).........................................................................7

*In re Hoffmann-La Roche Inc.*,
  587 F.3d 1333 (Fed. Cir. 2009).......................................................................12, 14

*In re TS Tech USA Corp.*,
    551 F.3d 1315 (Fed. Cir. 2008)...........................................................................11

*In re Volkswagen AG*,
    371 F.3d 201 (5th Cir. 2004) .............................................................................11

*In re ZTE (USA) Inc.*,
    890 F.3d 1008 (Fed. Cir. 2018)........................................................................1, 5

*NetSoc, LLC v. LinkedIn Corp.*,
    No. 18-CV-12215-RA, 2020 WL 209864 (S.D.N.Y. Jan. 14, 2020) ....................11

*Optic153 LLC v. Thorlabs Inc.*,
    No. 6:19-CV-00667-ADA, 2020 WL 3403076 (W.D. Tex. June 19, 2020) ...........9

*Pers. Audio, LLC v. Google, Inc.*,
    280 F. Supp. 3d 922 (E.D. Tex. 2017)................................................................10

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC*,
    137 S. Ct. 1514 (2017)..............................................................................1, 5, 6, 7

*Uniloc USA Inc. v. Box, Inc.*,
    No. 1:17-CV-754-LY, 2018 WL 2729202 (W.D. Tex. June 6, 2018)....................12

*VoIP-Pal.com, Inc. v. Twitter, Inc.*,
    No. 216CV02338RFBCWH, 2018 WL 3543031 (D. Nev. July 23, 2018) .............9

STATUTES

28 U.S.C. § 1400(b) .............................................................................................1, 5, 6, 7

28 U.S.C. § 1404(a) ................................................................................................ passim

28 U.S.C. § 1406(a) ................................................................................................ passim

OTHER AUTHORITIES

Fed. R. Civ. P. 45(c)(1)(A) .............................................................................................12

Fed. R. Civ. P. 12(b)(3).....................................................................................1, 5, 10

## I.    INTRODUCTION

Defendant LinkedIn Corporation ("LinkedIn") respectfully moves to dismiss Plaintiff GreatGigz Solutions, LLC's ("GreatGigz") Complaint pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure.  Venue is improper in this District under the patent venue statute, 28 U.S.C. § 1400(b), because GreatGigz cannot meet its burden to establish that LinkedIn (1) "resides," or (2) has "committed acts of infringement" and maintains a "regular and established place of business" within this District.  *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1521 (2017); *In re ZTE (USA) Inc.*, 890 F.3d 1008, 1013-15 (Fed. Cir. 2018).

LinkedIn is incorporated in Delaware and does not have any place of business in this District—let alone a "regular and established place of business."  *See TC Heartland LLC*, 137 S. Ct. at 1521.  GreatGigz's threadbare allegations of venue are limited to a data center located *outside* of this District (Compl. ¶ 5) and a handful of LinkedIn employees who maintain remote home offices that LinkedIn does not own, lease, or control (*id.*), neither of which is sufficient to satisfy § 1400(b).  *See In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017); *Bd. of Regents v. Boston Sci. Corp.*, No. 1:17-cv-1103, Dkt. 27 at 4 (W.D. Tex. Mar. 12, 2018), *aff'd* 936 F.3d 1365 (Fed. Cir. 2019).  Because GreatGigz has not met its burden to demonstrate proper venue, this case must be dismissed under Rule 12(b)(3).

In the alternative, if the Court elects not to dismiss this case, LinkedIn respectfully requests transfer per 28 U.S.C. § 1406(a) to the United States District Court for the Northern District of California ("N.D. Cal."), where LinkedIn is headquartered and where its employees with relevant knowledge regarding the facts and circumstances of this case reside.  The U.S. Court of Appeals for the Federal Circuit has made clear that, even where a defendant maintains *more than one physical office within the Western District of Texas*—in stark contrast with

LinkedIn's *zero* offices—convenience factors weigh in favor of transfer when the defendant has "identified a significant number of its own employees as potential witnesses" residing in a transferee venue, as is the case here. *In re Adobe*, No. 20-126, at 5 (Fed. Cir. Jul. 28, 2020).

## II.   FACTUAL BACKGROUND

### A.   <u>GreatGigz and Its Complaint</u>

GreatGigz is a Limited Liability Company registered in Florida. Compl. ¶ 1. It was formed less than three months ago, on May 26, 2020, by Raymond A. Joao, the sole inventor of the asserted patents and a resident of Yonkers, New York. *See id*. ¶ 11; Ex. A. Within weeks of its formation, GreatGigz sued LinkedIn, alleging that aspects of LinkedIn's website and infrastructure—specifically the "Jobs Tracker," "Job Search Alerts," and "Instant Job Notifications" features of the "LinkedIn Talent Site" and the "LinkedIn Talent Solutions Site" (the "Job Search Product"); and LinkedIn's "ProFinder Site" (the "ProFinder Product") (collectively the "Accused Products and Services")—infringe U.S. Patents Nos. 6,662,194 (the "`194 patent") and 7,490,086 (the "`086 patent") (the "patents-in-suit"). *See, e.g.*, Compl. ¶¶ 15, 48, 53, 65; Exs. B, C. GreatGigz has no alleged or otherwise discernable ties to the Western District of Texas ("W.D. Tex.").

GreatGigz acknowledges that LinkedIn is a Delaware corporation, but incorrectly asserts that LinkedIn "maintains a regular and established business presence in this District." *Id*. ¶¶ 2, 8. The Complaint relies on the alleged home offices of 32 LinkedIn employees within this District, claiming that they account for "nearly 10%" of LinkedIn's "453" employees worldwide. *Id*. ¶¶ 5-6 (citing a screenshot of what it alleges to be "LinkedIn's corporate profile page on LinkedIn.com"). Yet, GreatGigz's own citation states that LinkedIn has over 40 times that number of employees worldwide. *Id*. ¶ 6 (screenshot noting "See all 20,492 employees on LinkedIn").

The Complaint also alleges that "LinkedIn maintains substantial long-term data centers in the State of Texas [that] are under the direct control of LinkedIn" but cites only to LinkedIn's Richardson, Texas and Hillsboro, Oregon data centers, both of which are outside of this District. *See id.* ¶¶ 5-7 (excerpting an article titled "LinkedIn Expands with Texas Data Center," which reports on the 2013 opening of LinkedIn's Dallas-area data center).

**B.**     **LinkedIn Does Not Reside or Have Any Place of Business in W.D. Tex.**

LinkedIn is incorporated in Delaware, and has its principal place of business in Sunnyvale, California.  Declaration of Susie Fregoso ("Fregoso Decl."), ¶¶ 4, 8.  LinkedIn does not have any offices in Texas—let alone in W.D. Tex.—and it does not otherwise own, operate, or control any data centers, warehouses, or real estate in this District.  *Id.* ¶¶ 10-11.  LinkedIn operates data centers in Richardson, Texas; Hillsboro, Oregon; Santa Clara, California; Ashburn, Virginia; and Sterling, Virginia—none of which is located within this District.[1]  *See id.* ¶ 10.  Although GreatGigz alleges that 32 LinkedIn employees reside within this District (Compl. ¶ 5), that information is generated using self-reported information from individual LinkedIn users and is not an accurate reflection of LinkedIn's Texas-based employees (Fregoso Decl. ¶¶ 14-15).  In truth, LinkedIn has only about 10 remote workers that reside within W.D. Tex., which amounts to *less than a fraction of 1%* of LinkedIn's over 17,000 employee workforce.  *Id.* ¶ 13 (emphasis added).  All of these employees maintain home offices and do not work in locations that LinkedIn owns, leases, or controls in any way.  *Id.* ¶¶ 16-17.  LinkedIn does not reimburse these workers' housing costs, advertise their personal addresses, or require them to display, store, or distribute LinkedIn promotional materials, logos, signs, or inventory.  *Id.*

LinkedIn does not gain any benefit from having their remote employees reside in W.D.

---

[1] Richardson, Texas is located in the Northern District of Texas, not W.D. Tex.  Ex. D.

Tex.  *Id.*  They do not live in this District to serve existing customers or target potential customers in Texas.  *Id.* ¶ 16.  Instead, they choose to work remotely from this District for their own reasons—not because LinkedIn requires or even encourages it—and they can move to any LinkedIn office at any time without LinkedIn's permission, as their employment is not dependent on their continued residence within this District.  *Id.* ¶ 17.

C.      **LinkedIn's Headquarters and Relevant Operations are Located in N.D. Cal.**

LinkedIn is, and always has been, headquartered in the San Francisco Bay Area.  Fregoso Decl. ¶ 5.  The company was founded in Mountain View, California, within N.D. Cal., in 2003, and operates three large offices in Mountain View, Sunnyvale, and San Francisco.  *Id.* ¶¶ 5, 8.  In total, LinkedIn has approximately 11,210 employees, interns, and fixed-term contractors in ten United States offices, among which, roughly 8,250 people work from LinkedIn's San Francisco Bay Area offices.  *Id.* ¶ 13.

LinkedIn's operations relevant to the design, development, marketing, and function of the Accused Products and Services primarily occur in its San Francisco Bay Area offices.  *Id.* ¶ 20. Each of the Accused Products and Services is and was originally designed and developed, and continue to be maintained, by employees in LinkedIn's San Francisco Bay Area offices.  *Id.* Thus, the LinkedIn employees most knowledgeable about their design, development, marketing, and function of the Accused Products and Services—including the leads for the product, engineering, marketing, and financial analysis —are located in its San Francisco Bay Area offices.  *Id.* ¶¶ 22, 25, 26.  The same is true for LinkedIn employees most knowledgeable about finances, accounting, and revenue associated with the Accused Products and Services.  *Id.* ¶¶ 23, 25, 26.  As a result, the overwhelming majority of LinkedIn's relevant information, data, and documents, including the computer source code and technical documents for the Accused

Products and Services, are generated and maintained in its San Francisco Bay Area offices.  *Id.* ¶¶ 21, 29.

In light of the COVID-19 pandemic, LinkedIn has adopted a corporate policy prohibiting all non-essential travel, and requiring LinkedIn's prior written approval for any essential business travel.  *Id.* at ¶ 28.  Even if the effects of the pandemic recede and LinkedIn's corporate travel reverts to normal between now and a trial in this case, LinkedIn would be greatly inconvenienced by having to attend trial outside N.D. Cal.  *Id.*

## III.   LEGAL STANDARD

### A.   Dismissal for Improper Venue

When a defendant moves to dismiss a case for improper venue under Federal Rule of Civil Procedure 12(b)(3), courts need not accept pleadings as true and may consider evidence beyond the facts alleged in the complaint.  *See Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009); *Assetworks, Inc. v. City of Cincinnati*, No. SA 02 CA 0351 FB, 2003 WL 25463096, at *11 (W.D. Tex. Mar. 31, 2003).  In response to a 12(b)(3) challenge, the plaintiff bears the burden of establishing that venue is proper under § 1400(b).  *See In re ZTE (USA) Inc.*, 890 F.3d at 1013.  If a case is filed in an improper venue, the district court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  28 U.S.C. § 1406(a).

### B.   The Patent Venue Statute

Venue in patent cases is exclusively governed by 28 U.S.C. § 1400(b).  *See TC Heartland LLC*, 137 S. Ct. at 1517.  Section 1400(b) is clear: Venue is proper *only* where (1) "the defendant resides" or (2) "the defendant has committed acts of infringement and has a regular and established place of business."  28 U.S.C. § 1400(b).  When a defendant is not sued in its state of

incorporation—as is the case here—*TC Heartland* mandates showing *both* "committed acts of infringement" *and* "a regular and established place of business" for proper venue.  *TC Heartland*, 137 S. Ct. at 1518.  To determine what constitutes "a regular and established place of business," the Federal Circuit recognizes three "*Cray*" requirements: "(1) there must be a physical place in the district; (2) it must be a regular and established place of business; *and* (3) it must be the place of the defendant."  *In re Cray*, 871 F.3d at 1360 (emphasis added).

Regarding the third *Cray* element, a place is "of the defendant" only where the defendant "establish[es] or ratif[ies]" it.  *In re Cray*, 871 F.3d at 1363-64.  "It is not enough that [an] employee does so on his or her own."  To assist courts in this analysis, the Federal Circuit has provided relevant considerations, including: "whether the defendant owns or leases the place, or exercises other attributes of possession or control over the place"; "whether the defendant conditioned employment on an employee's continued residence in the district or the storing of materials at a place in the district so that they can be distributed or sold from that place"; whether "an employee can move his or home out of the district at his or her own instigation, without the approval of the defendant"; "whether the defendant lists the alleged place of business on a website, or in a telephone or other directory; or places its name on a sign associated with or on the building itself"; and "the nature and activity of the alleged place of business of the defendant in comparison with that of other places of business of the defendant in other venues."  *Id.*

## IV.    ARGUMENT

LinkedIn neither resides nor maintains a "regular and established place of business" in W.D. Tex.  Because GreatGigz has not and cannot meet either statutory requirement, this case should be dismissed for improper venue.

## A.    Venue is Improper in W.D. Tex.

### 1.    LinkedIn Does Not "Reside" in W.D. Tex.

The first prong of § 1400(b) is easily dispensed with:  LinkedIn does not "reside" in this District, because LinkedIn is incorporated in Delaware.  *See* Compl. ¶ 2; *TC Heartland*, 137 S. Ct. at 1521.

### 2.    LinkedIn Lacks a "Regular and Established Place of Business" Within W.D. Tex.

#### a)    GreatGigz's Complaint Fails the *Cray* Test

LinkedIn does not have, and GreatGigz cannot show, any "regular and established place of business" in this District that is sufficient to establish venue under § 1400(b).  *See In re Cray*, 871 F.3d at 1360.  Specifically, LinkedIn does not maintain *a single physical place of business* in this District, much less a "regular and established" one.  Fregoso Decl. ¶ 11.

Under the first *Cray* element, LinkedIn lacks a "physical place" in this District.  *See In re Cray*, 871 F.3d at 1360.  LinkedIn does not own or lease any office, warehouse, data center, or other real estate within W.D. Tex.  *See* Fregoso Decl. ¶¶ 10-11.  Although the Complaint references LinkedIn's Richardson, Texas data center, that fact is of no consequence, because it is located in the Northern District of Texas.  *See id*. ¶ 10; Ex. D.  To the extent GreatGigz relies on web services that LinkedIn provides to this District's consumers via this data center (*See* Compl. ¶ 7), that would be improper because the mere act of maintaining a website or virtual space that is accessible within a district, or facilitating electronic communications with persons in a district, does not meet *Cray's* test for a "physical place" and does *not* give rise to venue.  *In re Cray*, 871 F.3d at 1362 (explaining that "a virtual space or [] electronic communications from one person to another" is not a physical place).

LinkedIn does not have *any* place of business in this District, let alone a "regular and

established" place of business and accordingly cannot satisfy the second *Cray* element, either. *See In re Google LLC*, 949 F.3d 1338, 1344  (Fed. Cir. 2020).  Given the Federal Circuit's pronouncement in *Cray* that "[i]f any statutory requirement is not satisfied, venue is improper," this alone is sufficient to end the venue inquiry.  871 F.3d at 1360.

Even if GreatGigz could demonstrate the existence of a regular and established physical place of business, which it cannot, GreatGigz's remaining venue-related allegations fail under the third *Cray* element.  Other than its reference to LinkedIn's Richardson, Texas data center,[2] GreatGigz relies entirely on the alleged home offices of 32 LinkedIn employees within this District, claiming that these employees account for "nearly 10%" of LinkedIn's "453" employees worldwide.  *Id*. ¶¶ 5-6 (citing to a screenshot of what it alleges to be "LinkedIn's corporate profile page on LinkedIn.com").  This allegation is blatantly incorrect.  GreatGigz's own citation contradicts its fanciful assertion: "See all 20,492 employees on LinkedIn."  *See id*.  A basic search of publicly available information confirms that LinkedIn employs "*more than 16,000 full-time employees*" worldwide.  *See* Exs. E, F (emphasis added).  As is apparent from its own screenshot, GreatGigz obtained this incorrect number after filtering the results by entering the term "Texas" into the box labeled "Search employees by title, keyword or school"—notably, they did not search employees by "location."  Compl. ¶ 6.  This blunder should have been self-evident, as the screenshot (cropped in the Complaint) included any employees with "Texas" in their profile (*e.g.*, the University of Texas as a school listing), not merely employees located in Texas.  *Id.*  The facially implausible nature of these conclusions disentitles GreatGigz's factual allegations to any assumption of truth and fails Rule 8's pleading requirement as a matter of law.

---

[2] As noted, GreatGigz's Complaint also mentions the LinkedIn data center located in Hillsboro, Oregon, which is immaterial for purposes of supporting venue in this District.  *See* Compl. ¶ 6.

*Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

In reality, LinkedIn employs approximately 17,010 individuals worldwide, and roughly 10 of them reside in W.D. Tex., which amounts to less than a fraction of 1% of LinkedIn's total number of employees.  Fregoso Decl. ¶ 13.  Furthermore, each and every one of the controlling *Cray* factors relating to remote employees weighs against a finding that LinkedIn operates a regular and established place of business out of its employees' homes.  These individuals, which include one intern, work remotely from their homes, and LinkedIn does not hold them out as its own places of business.  *Id.* ¶ 16.  LinkedIn does not advertise the addresses of these homes on the Internet or its promotional materials, or label these homes with LinkedIn signage.  *See id*. Nor does LinkedIn require that its personnel who live in W.D. Tex. serve existing or potential customers here, store LinkedIn inventory, or distribute LinkedIn's advertising materials.  *See id*. ¶¶ 16-17.  LinkedIn does not own or lease these remote homes or reimburse any of the employees' housing costs.  *See id*. ¶ 17.  LinkedIn does not gain any benefit from having these individuals reside within this District, and they are not required to obtain prior permission from LinkedIn if they wish to move to one of LinkedIn's several U.S. offices.  *Id.*

In a near-identical scenario, this Court's sister Division applied the *Cray* test and found that a defendant's 46 remote employees—more than three times at issue here—were not sufficient to confer venue in this District.  *See Bd. of Regents*, No. 1:17-cv-1103, Dkt. 27 at 3-4. This Court has also applied the *Cray* test to dismiss an action for improper venue where, as here, the defendant "[did] not have any employees, lease any property, or have an office or other place of business" in the District.  *Optic153 LLC v. Thorlabs Inc*., No. 6:19-CV-00667-ADA, 2020 WL 3403076, at *2 (W.D. Tex. June 19, 2020).

Other district courts have arrived at a similar result.  *See, e.g.*, *CUPP Cybersecurity LLC v. Symantec Corp.*, No. 3:18-CV-01554-M, 2019 WL 1070869, at *4 (N.D. Tex. Jan. 16, 2019); *VoIP-Pal.com, Inc. v. Twitter, Inc.*, No. 216CV02338RFBCWH, 2018 WL 3543031, at *4 (D. Nev. July 23, 2018) ("there is no evidence that [defendant's remote software engineer's] work is consumer-facing"); *Pers. Audio, LLC v. Google, Inc.*, 280 F. Supp. 3d 922, 936 (E.D. Tex. 2017) (remote employees' homes are not "under the control of Google or were ever held out as Google's places of business").

In sum, it is insufficient to establish venue based on the presence of LinkedIn's remote employees within this District.  Just as in *Cray,* "[t]he facts presented [here] cannot support a finding that [a remote employee's] home was a regular and established *place of business*."  871 F.3d at 1364-65 (emphasis in original).  GreatGigz simply cannot equate these personal homes to LinkedIn's regular and established place of business.  The same result as in *Cray* should follow here.  Dismissal is particularly appropriate here because GreatGigz does not face "a statute of limitations problem or other procedural bar" which could hinder its ability to refile this action. *Experian Info. Sols., Inc. v. F.T.C.*, No. CIV. 3:00-CV-1631-H, 2001 WL 257834, at *4 (N.D. Tex. Mar. 8, 2001); *Caldwell v. Palmetto State Sav. Bank of S.C.*, 811 F. 2d 916, 919 (5th Cir. 1987); *Chicky Tackle, LLC v. Vallentine*, No. 6:18-CV-00063-RWS, 2018 WL 4286186, at *6 (E.D. Tex. Sept. 7, 2018).  In fact, Mr. Joao waited *more than ten years* after the issuance of the patents-in-suit to incorporate a litigation entity and initiate a patent suit against LinkedIn.  *See* Exs. A, B, C.  The Court should grant LinkedIn's Rule 12(b)(3) Motion.

## B.     If the Court Declines to Dismiss the Case, Transfer to N.D. Cal. is Appropriate

If this Court finds that the interest of justice is better served by transfer instead of dismissal, it may transfer this action to any district where the action "could have been brought."

-10-

28 U.S.C. § 1406(a).  District courts throughout this Circuit apply the § 1404(a) public and private convenience factors[3] in assessing transfer under §1406(a)—with the exception that LinkedIn's proposed venue need not be "clearly" more convenient.  *See In re Adobe*, No. 20-126, at 4; *CUPP Cybersecurity*, 2019 WL 1070869, at *6-7.[4]  Here, the Court should transfer this case to N.D. Cal., where LinkedIn is headquartered and maintains its principal place of business, and where the overwhelming majority of relevant witnesses and documents reside.

### 1.    <u>This Action "Could Have Been Brought" in N.D. Cal.</u>

Under §1406(a), transfer is limited to a transferee court where the action could have been brought in the first instance.  28 U.S.C. § 1406(a).  On this threshold question, LinkedIn is indisputably amenable to suit—i.e. personal jurisdiction, subject matter jurisdiction, and proper patent venue—in N.D. Cal., where it is headquartered and maintains its principal place of business.  *See, e.g., NetSoc, LLC v. LinkedIn Corp.*, No. 18-CV-12215 (RA), 2020 WL 209864, at *7 (S.D.N.Y. Jan. 14, 2020) (holding that transfer to N.D. Cal. "would be convenient and just"); Fregoso Decl. ¶ 8.  As such, N.D. Cal. is a proper venue.  *See* 28 U.S.C. §1406(a).

### 2.    <u>The Private Interest Factors Favor Transfer to N.D. Cal.</u>

All private interest factors favor transfer to N.D. Cal., and the Federal Circuit recently

---

[3] The private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive."  *See In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004).  The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or the application of foreign law."  *Id.*

[4] "Fifth Circuit precedent clearly forbids treating the plaintiff's choice of venue as a distinct factor in the § 1404(a) analysis."  *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008) (citing *In re Volkswagen of Am.*, 545 F.3d 301, 314 n.10 (5th Cir. 2008)).  Of course, plaintiff's choice of venue is moot where that choice is plainly improper under Section 1400(b).

instructed transfer on facts similar to these.  *In re Adobe*, No. 20-126.

### a)    Access to Sources of Proof

The Federal Circuit has stated that "[i]n patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer.  Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location."  *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (citation omitted).  LinkedIn, as the accused infringer, generates and maintains the bulk of its relevant documents relating to the design, development, and maintenance of the Accused Products and Services in its Sunnyvale, Mountain View, and San Francisco offices, and maintains none in W.D. Tex.  Fregoso Decl. ¶¶ 21, 29.  This includes the majority of hard-copy documents relevant to the design, development, marketing, and function of the Accused Products and Services, as well as source code, which LinkedIn makes available only on a need-to-know basis.  *Id.*; *see Uniloc USA Inc. v. Box, Inc.*, No. 1:17-CV-754-LY, 2018 WL 2729202, at *3 (W.D. Tex. June 6, 2018) (granting transfer where, *inter alia*, all "relevant hard-copy documents are stored in Northern California").  This factor supports transfer to N.D. Cal.

### b)    Availability of Compulsory Process

This factor weighs in favor of transfer when "a transferee venue has absolute subpoena power" over a substantial number of witnesses.  *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009) (citing *Genentech*, 566 F.3d at 1345).  A district court may only compel a witness to attend a trial, hearing, or deposition "within 100 miles of where the person resides, is employed, or regularly transacts business."  Fed. R. Civ. P. 45(c)(1)(A).  Importantly, LinkedIn is unaware of—and GreatGigz has not identified—a single third party witness in or anywhere near W.D. Tex.  Rather, to defend against GreatGigz's claims of infringement, LinkedIn may rely on material non-party witnesses, including former LinkedIn employees knowledgeable

about the Accused Products and Services, who LinkedIn believes are most likely to still reside

and work in N.D. Cal.  *See* Fregoso Decl. ¶ 27.  Since these individuals may not be willing to

testify voluntarily, transferring this case to N.D. Cal. will allow LinkedIn to compel their

personal attendance.

### c)    Cost of Attendance for Willing Witnesses

The convenience of witnesses attending trial "is probably the single most important factor

in [a] transfer analysis."  *Genentech*, 566 F.3d at 1345.  The Federal Circuit recently highlighted

this point, holding that transfer was appropriate even where a defendant maintained *more than*

*one physical office within W.D. Tex.*—in stark contrast with LinkedIn's *zero* offices—since the

defendant had "identified a significant number of its own employees as potential witnesses who

reside in the Northern District of California."  *In re Adobe*, No. 20-126, at 5; *In re Dropbox, Inc.*,

No. 2020-130, at 2 (Fed. Cir. July 28, 2020) (suggesting this Court reconsider its transfer denial

in light of the Federal Circuit's intervening decision in *Adobe*).

Here, witnesses with most knowledge of the Accused Products and Services are LinkedIn

employees that work from LinkedIn's San Francisco Bay Area offices.  Of LinkedIn's 11,210

United States employees, interns, and fixed-term contractors, roughly 8,250 work out of its San

Francisco Bay Area offices.  Fregoso Decl. ¶ 18.  The employees who are most knowledgeable

regarding the design, development, marketing, and function of the Accused Products and

Services reside within N.D. Cal., including product managers, product marketing managers,

engineers, designers, and staff.  *Id*. ¶ 22.  The employees most knowledgeable about the business

and financial aspects of the Accused Products and Services also reside in N.D. Cal.  *Id*. ¶ 23.

The majority of executive and management level personnel overseeing key decisions concerning

the design, structure, and content of the relevant features reside in N.D. Cal.  *Id*. ¶ 24.  While

early in the case, and reserving the ability to modify, LinkedIn has identified seven individuals

most knowledgeable about the Accused Products and Services, all of which work from LinkedIn's San Francisco Bay Area offices.  *Id*. ¶¶ 25, 26.

Conversely, GreatGigz has not identified any potential witnesses with relevant knowledge residing within this District.  GreatGigz is registered in Florida and the sole inventor of the patents-in-suit resides in New York, not Texas.  Ex. A.  The Accused Products and Services were neither developed nor designed, and are not maintained, in this District.  *See* Fregoso Decl. ¶ 29.  As a result, LinkedIn would not call any of its remote workers residing in the District as a witness at trial.

### 3.      The Public Interest Factors Favor Transfer to N.D. Cal.

The public interest factors also strongly weigh in favor of transfer to N.D. Cal.

### a)      Local Interest

Local interests are most salient when a district is home to a party, especially the defendant, since an infringement suit "calls into question the work and reputation" of those who "presumably conduct business in that community."  *In re Hoffmann-La Roche*, 587 F.3d at 1336. Since LinkedIn's founding in 2003, its headquarters have always been located in N.D. Cal., where it currently employs thousands of individuals across its offices in Sunnyvale, Mountain View, and San Francisco.  Fregoso Decl. ¶¶ 5, 18.  The Accused Products and Services were designed and developed at these offices within N.D. Cal, and its relevant employees are also residents of that district.  *Id*. ¶¶ 20-26.  Because this case involves adjudicating the alleged acts and consequences of its own residents, N.D. Cal. has a strong local interest in hearing this case.

On the other hand, GreatGigz has no connection to this District as it is registered in Florida and the sole inventor of the patents-in-suit resides in New York.  Ex. A.  As such, this is not a case about whether GreatGigz should have the ability to bring a lawsuit in its home forum. Thus, this factor favors transfer to N.D. Cal.

-14-

**b)** **Court Congestion**

Since venue is improper in GreatGigz's chosen forum, W.D. Tex., the Federal Circuit has instructed that the standard cross-district time-to-trial comparison is inapplicable here. *See In re Adobe*, No. 20-126, at 6. Moreover, "the court's general ability to set a schedule" more quickly than other courts does not speak to "whether there is an appreciable difference in docket congestion between the two forums." *Id.*; *see also In re Dropbox, Inc.*, No. 2020-130, at 2. That said, this District has experienced a recent deluge of new patent cases—a total of 529 complaints since January 2020—while N.D. Cal. has seen only 161 new patent cases in the same period. *See* Exs. G, H.

The other judicial district where this case "could have been brought" as to LinkedIn is the District of Delaware, LinkedIn's state of incorporation. *See* 28 U.S.C. § 1406(a); Fregoso Decl. ¶ 4. Average time-to-trial statistics indicate that cases reach trial approximately four or five months sooner in N.D. Cal. as compared to Delaware. *See* Exs. J, K. Additionally, the District of Delaware has seen 446 new patent cases filed this year, compared to N.D. Cal.'s 161 new patent cases. *See* Exs. G, I. This factor thus weighs in favor of transfer to N.D. Cal.

**c)** **Familiarity with Applicable Law and Conflicts of Law**

The last of the public interest factors are neutral, as LinkedIn is not aware of any applicable conflicts of law, and all federal courts are equally capable of applying federal patent law—particularly since N.D. Cal. is no stranger to patent litigation.

**V.    CONCLUSION**

For the foregoing reasons, LinkedIn respectfully requests that the Court grant its Motion to Dismiss, or in the alternative, transfer to N.D. Cal.

DATED:  August 14, 2020

Respectfully submitted,

*/s/    Katherine A. Helm*
Katherine A. Helm
*Appearing Pro Hac Vice*
khelm@dechert.com
Dechert LLP
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036
(212) 698-3559

Nisha Patel
*Appearing Pro Hac Vice*
nisha.patel@dechert.com
Dechert LLP
3000 El Camino Real, Suite 650
Palo Alto, CA 94306
(650) 813-4834

Timothy Dewberry
Texas Bar No. 24090074
timothy.dewberry@dechert.com
Dechert LLP
515 Congress Avenue, Suite 1400
Austin, TX 78701
(512) 394-3029

**Attorneys for Defendant
LinkedIn Corporation**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(b)(1) on this 14 day of August, 2020.  All other counsel not deemed to have consented to service in such manner will be served via first class mail.

*/s/   Katherine A. Helm*<br>Katherine A. Helm